COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Malveaux and Frucci

CHRISTOPHER RAMONE JACOBS

v.      Record No. 1536-24-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
FEBRUARY 17, 2026

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Bryant L. Sugg, Judge

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; Angelique Rogers, Assistant
Attorney General; on brief), for appellee.


Following a bench trial, the Circuit Court of the City of Newport News convicted

Christopher Jacobs of three counts of assaulting a police officer and sentenced him to 15 years of

incarceration, with all but 3 years and 2 months suspended.[2] On appeal, Jacobs challenges the

sufficiency of the evidence to sustain his convictions. Finding no error, we affirm the circuit

court's judgment.[3]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] At the time Jacobs was convicted, he was serving a previously suspended sentence. The circuit court revoked the remainder of his suspended sentence and resuspended ten months. Jacobs does not challenge the revocation of sentence.

[3] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the appeal is wholly without merit." *See* Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND[4]

Newport News police officers were called to an apartment complex to remove Jacobs for trespassing. Officer Hopkins and several other officers arrived at the apartment and arrested Jacobs. Jacobs was handcuffed and escorted to a patrol vehicle. Although Jacobs was initially cooperative with the officers, he became hostile when Officer Hopkins tried to search him before placing him in a patrol vehicle. Jacobs "prevented" the officers from searching him "by pushing his body against [the] patrol car" and "stiffening up his body." Jacobs repeatedly exclaimed to the officers, "just kill me," and aggressively tried to turn and face Officer Hopkins. Officer Hopkins "believed [Jacobs] was going to attempt to assault" the officers, so he decided to "put [Jacobs] on the ground."

As the officers wrestled Jacobs to the ground, he turned his body to face Officer Hopkins. Officer Hopkins put his hand on the side of Jacobs's face "[i]n an attempt to turn him back over." Jacobs "bared" his teeth and tried to bite Officer Hopkins on the forearm. As the officers tried to control Jacobs on the ground, he threatened to assault Officer Hopkins "when these handcuffs [come] off," and said he was going to spit on Officer Hopkins.

Because of Jacobs's erratic behavior, the officers decided to use a "kick stop" restraint on his legs. Jacobs was held face down on his stomach by numerous officers while Officer Akers prepared to attach restraints to his legs and another officer prepared to put a spit bag on his head. While Officer Akers was putting the restraints on Jacobs's legs, he kicked her in the chest, causing her to fall backwards. Once the officers got the leg restraints on Jacobs and had placed a spit bag over his head, they began to load him into the back of a patrol vehicle. As they placed Jacobs in the

---

[4] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

vehicle, he yelled, "I fucking hate y'all," and swung his head violently, "attempting to headbutt" Officer Dooley.

At trial, Officer Hopkins testified that Jacobs's "teeth made contact with [his] forearm," but he was able to move his arm out of the way "before [Jacobs] bit down." Officer Akers testified that Jacobs "kick[ed] his legs back onto [her] chest . . . caus[ing] [her] to fall," as she tried to put restraints on his legs. Officer Dooley testified that Jacobs "brought his head back and his body and threw it forward in [Officer Dooley's] direction." The body camera footage of all three officers was entered into evidence and played for the circuit court.

Jacobs moved to strike the evidence. The circuit court found the video from the body cameras to be determinative. The circuit court stated that it was clear that Jacobs "raised his head toward [Officer Hopkins's] arm, open[ed] his mouth," and "baring his teeth . . . appeared to [make] contact" with Officer Hopkins's arm. The circuit court found that while Jacobs may not have intended to kick Officer Akers specifically, Jacobs would reasonably know that when he kicked his legs, "that somebody was going to be kicked." And Jacobs "clear[ly] lunge[d]" his "head towards Officer Dooley," attempting to hit him. The circuit court convicted Jacobs of three counts of assaulting a law enforcement officer. Jacobs appeals.

## ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition

it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Jacobs argues that "although [he] attempted to bite Officer Hopkins," there was no completed bite, no bite marks, and Officer Hopkins did not sustain any injury from the attempted bite. Likewise, Jacobs asserts that when he "attempted to head-butt Officer Dooley," he did not make contact with Officer Dooley. He suggests that because the evidence neither shows that he "actually bit" Officer Hopkins, nor that he "in fact headbutted" Officer Dooley, the evidence is insufficient to convict him for assault and battery. With respect to the kick inflicted upon Officer Akers, he claims "the evidence was unclear whether [he] intended to inflict bodily harm." Jacobs argues that the Commonwealth "failed to exclude the reasonable hypothesis of innocence that Jacobs kicked out behind him and made incidental contact with Officer Akers." We find Jacobs's arguments unavailing.

"[I]f any person commits an assault or an assault and battery against another knowing or having reason to know that such other person is . . . a law-enforcement officer . . . such person is guilty of a Class 6 felony." Code § 18.2-57(c). "To sustain a conviction for assault, the evidence need only prove 'an attempt or offer, with force and violence, to do some bodily hurt to

another.'" *Adams v. Commonwealth*, 33 Va. App. 463, 468 (2000) (quoting *Harper v. Commonwealth*, 196 Va. 723, 733 (1955)). An act done in furtherance of one's "specific intent to commit a battery" constitutes assault. *Park Oil Co. v. Parham*, 1 Va. App. 166, 170 (1985). *See Adams*, 33 Va. App. at 469. "Battery is . . . the least touching of another's person[], willfully or in anger, whether by the party's own hand, or by some means set in motion by him. *Id.* at 463. An unlawful touching committed with "an intention to do bodily harm—either an actual intention or an intention imputed by law"—constitutes assault and battery. *Id.*

"Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case." *Bryant v. Commonwealth*, 70 Va. App. 697, 714 (2019) (quoting *Hughes v. Commonwealth*, 18 Va. App. 510, 519 (1994)). "The state of mind of an accused may be shown by his conduct and by his statements." *Id.* (quoting *Hughes*, 18 Va. App. at 519). Intent "must be determined from the outward manifestation" of the defendant's "actions leading to usual and natural results, under the peculiar facts and circumstances disclosed." *Id.* (quoting *Hughes*, 18 Va. App. at 519). "This determination presents a factual question which lies peculiarly within the province of the [fact finder]." *Id.* (alteration in original) (quoting *Hughes*, 18 Va. App. at 519).

The evidence supports the conviction for assault and battery of Officer Hopkins. Officer Hopkins's testimony that Jacobs's teeth made contact with his arm was unrefuted. The circuit court found that the video from Officer Hopkins's body camera showed Jacobs's teeth contacting his arm as Jacobs tried to bite him. That Jacobs did not "actually bit[e]" Officer Hopkins does not negate his conviction because "[t]he slightest touching of another . . . if done in a rude, insolent, or angry manner, constitutes a battery." *Adams*, 33 Va. App. at 469.

Likewise, the evidence supports the conviction for assault and battery of Officer Dooley. Jacobs yelled, "I fucking hate y'all" and then swung his head at Officer Dooley. The circuit

court found that the video from Officer Dooley's body camera "clear[ly]" showed Jacobs attempting to headbutt Officer Dooley. Further, Jacobs concedes that he "attempted to head-butt Officer Dooley." "There is no requirement that a victim be physically touched to be assaulted." *Zimmerman v. Commonwealth*, 266 Va. 384, 387 (2003). A fact finder could reasonably conclude that Jacobs had the "specific intent to commit a battery" when he swung his head at Officer Dooley. *Park Oil*, 1 Va. App. at 170.

Finally, the evidence supports the conviction for assault and battery of Officer Akers. When Officer Akers began fitting the leg restraints on Jacobs, there were numerous officers on top of him, trying to control his movements. Jacobs "kick[ed] his legs back" and struck Officer Akers, "caus[ing] [her] to fall." The requisite intent for assault and battery "may be inferred in law from the consequences that are naturally to be apprehended as the result of the particular act, the doing of which was intentional." *Davis v. Commonwealth*, 150 Va. 611, 619 (1928). The circuit court rejected Jacobs's contention that he kicked Officer Akers incidentally, finding that Jacobs knew, or reasonably should have known, he would kick one of the officers under the circumstances. The "'reasonable hypothesis of innocence' principle is 'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'" *Commonwealth v. Wilkerson*, 304 Va. 92, 101-02 (2025) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017)). "Whether [a] hypothesis of innocence is reasonable is itself a 'question of fact' subject to deferential appellate review." *Bennett v. Commonwealth*, 69 Va. App. 475, 492 (2018) (alteration in original) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)). "[T]he factfinder determines which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Moseley*, 293 Va. at 464. The circuit court, "upon consideration of

all the evidence," reasonably rejected Jacobs's hypothesis of innocence. *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003).

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*